**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 23, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CIARAN PAUL REDMOND,

    Defendant-Appellant.

No. 09-1560

(D.C. No. 09-CR-00123-REB-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **TACHA**, and **O'BRIEN**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

Defendant-Appellant Ciaran Paul Redmond was convicted of three counts of bank robbery in violation of 18 U.S.C. § 2113(a). The district court sentenced

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Redmond to 125 months' imprisonment on each count. Two of the sentences, along with 70 months from the third sentence, were ordered to run concurrently, and the remaining 55 months from the third sentence was ordered to run consecutively. The sentence imposed resulted in an aggregate term of 180 months' imprisonment. On appeal, Redmond challenges the reasonableness of his sentence and the district court's compliance with Federal Rule of Criminal Procedure 32(h). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I

On March 24, 2009, a grand jury empaneled by the United States District Court for the District of Colorado returned an indictment against Redmond that charged him with six counts of bank robbery in violation of 18 U.S.C. § 2113(a). Redmond pleaded guilty to three counts of bank robbery pursuant to a written plea agreement. In the plea agreement, the parties set forth several representations concerning Redmond's anticipated United States Sentencing Guidelines range. The parties agreed that Redmond's total offense level should be 24, but acknowledged that Redmond's criminal history category was "tentative" because of his "extensive criminal history." R. Vol. 1 at 32-33. Accordingly, the parties estimated that Redmond's advisory Guideline range "could conceivably" vary from 51 months up to 125 months. Id. at 33. Importantly, however, the parties acknowledged in the plea agreement that "the court may impose any sentence, up to the statutory maximum, regardless of any

2

guideline range computed," "that the court [was] not bound by any position of the parties," and that the "court [was] free . . . to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation and any other relevant information." Id. at 31-32.

The district court conducted a change of plea hearing on August 27, 2009, during which the district court engaged in a thorough colloquy with Redmond to verify that he was entering a knowing and voluntary plea of guilty to three counts of bank robbery. Aware that each count of bank robbery carried a maximum term of twenty years' imprisonment, Redmond and his counsel asked the following question during the plea colloquy: "So if I plead guilty to three bank robberies I face up to sixty years in prison?" R. Vol. 2 at 24. In responding to the question, the district court explained to Redmond that because he was pleading guilty to more than one crime, the district court "must then consider and determine whether [his] sentences should be imposed and served concurrently, . . . or consecutively, . . . or partially concurrently and partially consecutively." Id. at 25. The district court explained that in making this determination, it was "required by federal law to consider certain factors. Those factors appear at 18 U.S.C. Section 3584(a) and (b), and that section of federal law points me back and requires me to again consider the Section 3553(a) factors which we have already discussed." Id. The district court further explained that it could not tell Redmond at that time "how that analysis will shake out at the end of the day. I will be able to tell you that

3

during the sentencing hearing." Id. at 26. Redmond indicated that he understood this process.

At other points during the colloquy, Redmond explained that it was his understanding that apart from the calculation of his criminal history category, he and the Government had agreed that "this Plea Agreement right here is appropriate for what will happen at sentencing . . . ." Id. at 14; see also id. at 29. In doing so, Redmond directed the district court to the final section of his plea agreement, entitled "Why The Proposed Plea Disposition Is Appropriate," which explained how the parties believed "the sentencing range resulting from the proposed plea agreement is appropriate because all relevant conduct is disclosed, the sentencing guidelines take into account all pertinent sentencing factors . . ., and the charges to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior." R. Vol. 1 at 34. In response to these interactions, the district court carefully verified that Redmond understood that the plea agreement's "preliminary and tentative calculations" did not bind the district court, R. Vol. 2 at 14, and that the district court "ha[d] the discretion to impose a sentence either within the guidelines, high, middle or low, I can impose a sentence beneath the guidelines, and I can impose any sentence up to and including the maximum which has been prescribed by Congress," id. at 30-31. At the conclusion of the colloquy, Redmond pleaded guilty to three counts of bank robbery, specifically counts 2, 4, and 6 of the indictment.

4

The Presentence Report ("PSR") prepared prior to sentencing determined Redmond's base offense level was 20 under U.S.S.G. § 2B3.1(a), applied a two-level enhancement under § 2B3.1(b)(1) because property of a financial institution was taken, applied a two-level enhancement under § 2B3.1(b)(2)(F) because a threat of death was made in each of the three bank robberies to which Redmond had pleaded guilty, and applied a three-level multiple count adjustment under § 3D1.4. When Redmond's offense level was reduced three levels for acceptance of responsibility, his total offense level was 24. For Redmond's criminal history category, the PSR identified 50 prior adult convictions—one of which was a 1998 conviction for federal bank robbery—and determined that Redmond's criminal history category was VI. These calculations produced a Guideline range of 100-125 months.

Redmond subsequently filed a "Motion for Downward Departure and Objection to PSI," in which he objected to the PSR's calculation of his criminal history category, and requested a downward departure in recognition of the PSR's over-representation of Redmond's criminal history, and also in recognition of "the role that his mental disorders have played in the commission of these offenses." R. Vol 3 at 88, 97.[1] Additionally, Redmond "request[ed] a variance below his

---

[1] Specifically, Redmond asked the district court "to depart downward from Criminal History Category (CHC) VI to CHC IV," which would have reduced his advisory Guideline range to 77-96 months. R. Vol. 3 at 88.

5

advisory guideline range pursuant to 18 U.S.C. § 3553(a)." Id. at 88.

The district court conducted Redmond's sentencing hearing on December 4, 2009. During the hearing, the district court overruled Redmond's objections to the PSR's calculation of his criminal history category and declined to exercise its discretion to grant Redmond a downward departure. R. Vol. 2 at 62, 64. Before rejecting Redmond's request for a sentencing variance, and before ultimately pronouncing Redmond's sentence, the district court considered the "discrete sentencing factors and needs at 18 U.S.C. Section 3553(a)(1) through (7)," and stated as follows:

> I now make an individualized assessment based on the relevant facts presented. First, concerning the nature and circumstances of these offenses, three bank robberies, I find and conclude as follows: As a crime, bank robbery is inherently serious because of its demonstrated, its empirical potential for death or serious bodily injury to innocent people, often bank employees or bank customers.
> Congress makes bank robbery inherently serious by providing for punishment by up to twenty years in a federal penitentiary.
> Bank robbery almost always, as it did in this case, traumatizes and terrorizes its victims. Victims are robbed of their sense of personal safety and security, frequently their lives are changed forever and not for the better.
> These bank robberies were especially serious and dangerous because of the way each was committed. Each robbery was committed during business hours, while the bank was open for business. Innocent bank employees and customers were present and in harm's way. Each robbery involved a threat of death or physical harm. Each robbery involved the threatened use of a deadly weapon, albeit the defendant was not armed.
> . . .
> I have conducted an individualized assessment of Mr. Redmond and his unique characteristics and circumstances. I have viewed him as the unique being that he is.

6

Concerning his history and characteristics, I find and conclude as follows: That his philosophy and lifestyle as an adult evinces an abject disrespect for the law and the property and rights of others, included those he professes to love.

The defendant's criminal history is not substantially overrepresented. Instead, it is substantially understated. The presentence report documents and details 50 adult convictions, most of which are not now assessed criminal history points due to the age of those convictions. However, those convictions remain relevant under 18 U.S.C. Sections 3553(a)(1) and 3661.

Even so, the defendant has 18 properly assessed viable criminal history points, which places him in criminal history category VI, noting that 13 criminal history points result in a criminal history category of VI.

Tellingly and relevantly at the time of his last federal presentence investigation the defendant had 43 criminal history points. Among his myriad convictions are two felony convictions, one of which was for bank robbery, for which the defendant was sentenced in Federal Court to eight years . . . . So much for deterrence.

. . .

As a practical matter, not a legal matter, Mr. Redmond is a career and habitual criminal whose recidivism is indeed probable and predictable. His circumstances are exacerbated further by his documented history of extreme alcohol and substance abuse, which is checked only during periods of incarceration.

In mitigation, Mr. Redmond has a history of post concussion, epilepsy and mental health problems. None of which, however, explain or excuse these bank robberies, which instead appear to have been motivated by his desire to get and abuse alcohol and hard drugs.

To provide for just punishment, to promote respect for the law, to protect the public from further crimes of the defendant, to provide adequate deterrence, to provide Mr. Redmond with an opportunity for rehabilitation, which includes medical treatment for his mental health issues and his alcohol and substance abuse, and to avoid unwarranted sentencing disparities, I conclude ultimately that lengthy prison sentences are warranted and required.

Only incapacitation through long-term confinement will protect the public, including its financial institutions, banks, deter the defendant, deter others similarly situated or inclined, and provide the defendant with a meaningful opportunity for rehabilitation and treatment.

7

Thus, I conclude ultimately that a sentence variance is not warranted, and that the defendant should be sentenced to a term of imprisonment of 125 months on each count of conviction . . . .

That in considering the propriety or necessity of imposing concurrent or consecutive or partially concurrent and partially consecutive sentences, I have considered as to each count of conviction the provisions of 18 U.S.C. Sections 3584(a) and (b) and 3553(a)(1) through (7), and I find and conclude that the sentences should be imposed and served partially concurrently and partially consecutively.

That the sentences imposed on Counts 2 and 4 should be served concurrently with each other. And the sentence imposed on Count 6 should be served partially concurrently and partially consecutively with the sentences imposed on Counts 2 and 4.

So that 70 months of the sentence on Count 6 should be imposed and served concurrently with the concurrent sentences imposed on Counts 2 and 4. And 55 months of the sentence on Count 6 should be imposed and served consecutively with the concurrent sentences imposed on Counts 2 and 4 for a total sentence of 180 months.

Id. at 65-69. The district court further concluded that these sentences were "necessary to avoid unwarranted sentencing disparities," and were "sufficient, but not greater than necessary, to satisfy the requirements, principles and needs of 18 U.S.C. Section 3553(a) and (a)(2)." Id. at 69, 70. Finally, after pronouncing sentence, the district court asked the parties if there was any "further business in this case concerning these sentences . . . ." Id. at 76. Though Redmond requested that some of his property be returned to him, and asked the district court to recommend certain correctional facilities to the Bureau of Prisons, Redmond made no mention of deficient notice concerning the imposition of partially consecutive sentences at that time.

8

II

We review a criminal defendant's sentence for reasonableness, deferring to the district court under the "familiar abuse-of-discretion standard of review." Gall v. United States, 552 U.S. 38, 46 (2007). Reasonableness review has a procedural and substantive component. United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1214 (10th Cir. 2008). Redmond argues that his sentence is procedurally and substantively unreasonable.

A

In reviewing a criminal defendant's sentence for procedural reasonableness, we determine whether the district court "committed any error in calculating or explaining the sentence." Id. Redmond argues that his sentence is procedurally unreasonable "because the district court engaged in improper double counting by adding three points to Mr. Redmond's offense level under U.S.S.G. § 3D1.4 for multiple counts, while also imposing a fifty-five month consecutive sentence for the same counts of conviction." Aplt. Br. at 12. Redmond, however, did not raise this procedural objection with the district court, and therefore our review is for plain error. United States v. Ruiz-Terrazas, 477 F.3d 1196, 1199 (10th Cir. 2007). "Plain error occurs when there is (i) error, (ii) that is plain, which (iii) affects the defendant's substantial rights, and which (iv) seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. Because we conclude that the district court did not engage in improper double-counting, we

9

find no error and will not go beyond the first step in the plain error analysis.

"Double-counting occurs when the same conduct on the part of the defendant is used to support separate increases under separate sentence enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes." United States v. Terrell, --- F.3d ----, 2010 WL 2367490, at *3 (10th Cir. 2010) (quotations, citation, and alterations omitted). "[A]ll three criteria must be satisfied to constitute double counting." United States v. Rojas, 531 F.3d 1203, 1207 (10th Cir. 2008). Otherwise, "[t]he court may punish the same act if the enhancements bear on conceptually separate notions relating to sentencing." Id. (quotation and citation omitted).

We reject Redmond's double-counting argument because his comparison of a Sentencing Guideline provision and a federal statute that authorizes the imposition of concurrent and consecutive sentences for multiple counts of conviction is fundamentally misplaced. Within the Sentencing Guidelines, Chapter 3, Part D "provides rules for determining a single offense level that encompasses all the counts of which the defendant is convicted," U.S.S.G. Ch. 3 pt. D introductory cmt., and as part of that procedure, U.S.S.G. § 3D1.4 sets forth a process for computing the "combined offense level" that will ultimately be used to determine the appropriate advisory guideline range. See U.S.S.G. §§ 3D1.4, 3D1.5. But following United States v. Booker, 543 U.S. 220 (2005), "the guidelines do not control whether sentences run concurrently or consecutively."

10

United States v. Jarvis, 606 F.3d 552, 554 (8th Cir. 2010). Instead, we look to 18 U.S.C. § 3584, which recognizes that when multiple terms of imprisonment are imposed, the district court has the discretion to run those terms of imprisonment concurrently or consecutively. 18 U.S.C. § 3584(a); Jarvis, 606 F.3d at 553-54. Therefore, because U.S.S.G. § 3D1.4 and 18 U.S.C. § 3584 "bear on conceptually separate notions relating to sentencing," Rojas, 531 F.3d at 1207 (quotations and citation omitted), the district court did not engage in improper double-counting.

B

We employ an abuse of discretion standard in reviewing a district court's sentencing decision for substantive reasonableness, including the decision of whether to impose consecutive or concurrent sentences. United States v. Rutherford, 599 F.3d 817, 820 (8th Cir. 2010); see also United States v. Fay, 547 F.3d 1231, 1235 (10th Cir. 2008). In performing substantive reasonableness review, we consider "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." Alapizco-Valenzuela, 546 F.3d at 1215 (quotations and citation omitted). Here, we focus our attention on 18 U.S.C. § 3584, which provides that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time, . . . the terms may run concurrently or consecutively . . . ." 18 U.S.C. § 3584(a). The statute further provides that "[t]he court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as

11

to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." Id. § 3584(b).

Redmond contends that his partially consecutive sentences are "substantively unreasonable because [they are] too long in light of the § 3553(a) factors." Aplt. Br. at 12. But apart from contending that "[c]onsecutive sentences . . . for [Redmond's] multiple counts of conviction constitutes impermissible double counting," id., an argument we have already rejected, Redmond offers nothing to suggest that the district court's imposition of partially consecutive sentences was an abuse of discretion. To the contrary, the district court engaged in a thorough and individualized analysis of the § 3553(a) factors in imposing an aggregate term of 180 months' imprisonment. In particular, the district court concluded that Redmond's bank robberies were "especially serious and dangerous;" that Redmond's "philosophy and lifestyle as an adult evince[d] an abject disrespect for the law and the property and rights of others," especially in light of his numerous prior convictions, one of which was for bank robbery; and that because Redmond's "recidivism [was] indeed probable and predictable," "[o]nly incapacitation through long-term confinement will protect the public," and provide meaningful deterrence. R. Vol. 2 at 65-68. We conclude that Redmond's partially consecutive sentences are reasonable in light of the district court's consideration of the § 3553(a) factors, as well as the individual circumstances of Redmond's case.

12

## III

Redmond also contends that the district court violated Federal Rule of Criminal Procedure 32(h) by failing to provide Redmond with notice of its intent to impose consecutive sentences. Because Redmond did not raise this procedural objection to the district court, our review of this challenge is only for plain error. United States v. Romero, 491 F.3d 1173, 1177-78 (10th Cir. 2007).

Federal Rule of Criminal Procedure 32(h) provides that "[b]efore the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure." Fed. R. Crim. P. 32(h). Rule 32(h) additionally requires that "[t]he notice must specify any ground on which the court is contemplating a departure." Id. In Irizarry v. United States, --- U.S. ---, 128 S. Ct. 2198, 2200-02 (2008), the Supreme Court declined to extend the notice provisions of Rule 32(h) to "every sentence that is a variance from the Federal Sentencing Guidelines range . . . ." Because "'[d]eparture' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines," the Court concluded that Rule 32(h), "by its terms," "does not apply to § 3553 variances." Id. at 2202.

The Court also recognized that Congress enacted Rule 32(h) in response to the Court's prior decision in Burns v. United States, 501 U.S. 129, 138-39 (1991),

13

where the Court interpreted Rule 32 to require advance notice of a district court's intention to depart upward based on a ground not identified in the PSR or previously advocated by the Government.  Burns, however, came from an era of mandatory Sentencing Guidelines which "prohibited district courts from disregarding 'the mechanical dictates of the Guidelines' except in narrowly defined circumstances."  Irizarry, 128 S. Ct. at 2202 (quoting Burns, 501 U.S. at 133).  The Court's subsequent decision in Booker "invalidated the mandatory features of the Guidelines," and therefore lessened whatever expectation a criminal defendant previously had in receiving a "sentence within the presumptively applicable guideline range."  Id.  "Now faced with advisory Guidelines," the Court in Irizarry chose to fashion a pragmatic, rather than categorical, solution to the problem of unfair surprise at sentencing.  Id.

> Sound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues. We recognize that there will be some cases in which the factual basis for a particular sentence will come as a surprise to a defendant or the Government. The more appropriate response to such a problem is not to extend the reach of Rule 32(h)'s notice requirement categorically, but rather for a district judge to consider granting a continuance when a party has a legitimate basis for claiming that the surprise was prejudicial.

Id. at 2203.  The Court placed its confidence "in the ability of district judges and counsel . . . to make sure that all relevant matters relating to a sentencing decision have been considered before the final sentencing determination is made."  Id. at

14

2203-04. For trial lawyers prepared for sentencing, "'[g]arden variety considerations of culpability, criminal history, likelihood of reoffense, seriousness of the crime, nature of the conduct and so forth should not generally come as a surprise.'" Id. at 2203 (quoting United States v. Vega-Santiago, 519 F.3d 1, 5 (1st Cir. 2008) (en banc)).

Redmond acknowledges the impact that Irizarry has on his argument, but nevertheless insists that because the district court concluded "a variant sentence was not warranted, . . . Rule 32(h)['s] notice requirement was clearly implicated." Aplt. Br. at 13. Redmond also asks us to "consider the fairness issue in his particular case," because the district court "was on notice of Mr. Redmond's expectations when entering into his plea agreement," and "neither the PSR, probation officer or the government were advocating for an above the guideline sentence." Id. at 14-15.

We reject this argument on both grounds. First, we view Redmond's sentence as more analogous to a variance from the Guidelines than a departure within the Guidelines. Cf. Rutherford, 599 F.3d at 822 (alternatively characterizing a consecutive sentence as "an upward variance from the Guidelines"). Moreover, because the district court imposed partially consecutive sentences pursuant to § 3584, the sentences would not satisfy Irizarry's definition of departure. See 128 S. Ct. at 2202 ("'Departure' . . . refers *only* to non-Guideline sentences imposed under the framework set out in the Guidelines."

15

(emphasis added)).

Second, we conclude that Redmond had sufficient notice to anticipate the imposition of partially consecutive sentences. In signing the "Statement By Defendant In Advance of Guilty Plea," Redmond acknowledged that if he was "convicted of more than one count [of bank robbery], the sentences may be either concurrent or consecutive." R. Vol. 1 at 35-36. During the plea colloquy, Redmond and his counsel brought up the possibility of consecutive sentences, and the district court informed Redmond that it had the discretion to impose consecutive sentences under 18 U.S.C. § 3584, and that the determination of Redmond's sentence could only occur at the sentencing hearing. R. Vol. 2 at 24-26. Finally, the district court expressly gave Redmond the opportunity to respond to the imposition of partially consecutive sentences at the conclusion of his sentencing hearing. At that time, Redmond made no mention of deficient notice. Id. at 76-77. We conclude from these interactions that Redmond had sufficient notice to anticipate the imposition of consecutive sentences, and to otherwise request a continuance if the court's statements prior to imposing sentence came as a surprise. And whatever expectations Redmond had about receiving a sentencing within the plea agreement's estimated Guideline range, we note that Redmond, by entering into the plea agreement, and by his sworn answers during his plea colloquy, fully understood that the district court retained ultimate discretion to determine his sentence.

16

## IV

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Chief Judge