**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0297n.06

No. 09-3929

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**May 05, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| PHILIP D. ROSSI, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| _____ | ) | |

Before:  MOORE, GIBBONS, and McKEAGUE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  Defendant-Appellant Philip Rossi pleaded guilty to one count of mail fraud relating to a fraudulent investment scheme in which he converted for his own purposes and personal use $3.5 million invested with him by approximately forty clients. He now appeals his above-Guidelines sentence of 144 months of imprisonment.  Rossi challenges both the procedural and substantive reasonableness of his sentence.  Specifically, he argues that (1) the district court failed to give defense counsel a meaningful opportunity to address its decision to vary upward from the applicable Guidelines range, (2) his sentence is grossly disproportionate to sentences imposed for similar conduct, and (3) the district court relied on impermissible grounds and failed to provide an adequate explanation for its sentence.  Because the district court committed neither procedural nor substantive error, we **AFFIRM** the district court's sentence of 144 months of imprisonment.

## I.  BACKGROUND & PROCEDURE

Rossi, a registered investment advisor with the State of Ohio and the Financial Industry Regulatory Authority until 2007, owned and operated an accounting practice called Rossi & Associates and a money-management company called Patterson-Ross Financial Resources, Inc. Beginning in 2000 and continuing through September 2008, Rossi induced approximately forty individuals to invest over $3.5 million with him by falsely representing that he would establish investment accounts, purchase securities, or purchase notes or bonds in the individual investor's name.  Instead, Rossi "converted the client's money for his own purposes and personal use."  R. 12 (Plea Agreement ¶ 12).  Rossi sent falsified account statements and income statements, as well as checks drawn on accounts with insufficient funds, to his clients through the mail.  At times during the scheme, Rossi falsely told clients who attempted to withdraw funds that (1) "the funds were tied up and could not be withdrawn for a period of time," (2) "he could not return the funds due to tax penalties for early withdrawals," or (3) "post-9/11 regulations required the Department of Homeland Security to perform background checks on individuals requesting the withdrawal of more than $10,000 before the money could be disbursed."  *Id.*

Rossi was indicted on one count of mail fraud on November 19, 2008.  He was originally released on bond during pretrial proceedings. On February 19, 2009, Pretrial Services filed a petition with the district court stating that it was informed that Rossi had continued to have contact with potential victims and asking the district court to impose an additional condition on his release that he not have any contact with potential victims.  The district court issued an order on February 20,

2009, imposing such condition. On March 9, 2009, the government filed a motion to revoke Rossi's release, alleging that Rossi had violated the court's February 20th order by speaking with a victim on March 2nd or 3rd and promising the victim that he would send a check to the victim for the money he owed. After hearing arguments on the motion, the district court entered an order revoking Rossi's bond.

Rossi pleaded guilty to the one count of mail fraud on April 16, 2009, pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1). Using the 2008 United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), the Presentence Investigation Report ("PSR") calculated Rossi's advisory Guidelines range as 63 to 78 months. It calculated a total offense level of 26: a base offense level of 7; plus 18 levels for loss greater than $2.5 million, 2 levels for more than ten victims, and 2 levels for abuse of a position of trust; less 3 levels for acceptance of responsibility. Rossi had one state criminal conviction in 2008—related to the instant scheme—for passing bad checks, and, therefore, his criminal history was category one. At sentencing on July 13, 2009, defense counsel requested a sentence of 63 months, the lowest possible within the advisory Guidelines range. The government sought a sentence at the high end of the Guidelines range, specifically 71 months. After counsel's arguments, a number of victims spoke to the court. The district court then reviewed the information in the PSR and addressed the Guidelines range, adopting the PSR's calculation of 63 to 78 months. It next discussed the sentencing factors under 18 U.S.C. § 3553(a). The district court ultimately concluded that it was "going to upward vary six levels" and imposed a sentence of 144 months of imprisonment. R. 19 (Sent. Hr'g Tr. at 43). The district court

3

also imposed restitution in the amount of $3,531,622.51. Rossi timely appealed on July 22, 2009.

On July 27, 2009, the district court entered its written judgment and attached to its judgment the

transcript of the victims' statements at the sentencing hearing, the transcript of the district court's

discussion of the § 3553(a) factors at the sentencing hearing, a three-page sentencing memorandum

outlining its reasoning for imposing the 144-month sentence, and a list of the victims.

Rossi now raises three assignments of error to challenge the procedural and substantive

reasonableness of his sentence.

## II. ANALYSIS

### A. Standard of Review

We review sentences for both procedural and substantive reasonableness under an abuse-of-

discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). Procedural unreasonableness

includes instances when a sentencing court "fail[s] to calculate (or improperly calculat[es]) the

Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the [18 U.S.C.] § 3553(a)

factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the

chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* "The

essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than

necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v.*

*Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010). "A sentence is substantively unreasonable

if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails

to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent

factor." *Id.* at 633 (internal quotation marks omitted). We must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. If, as in this case, "the sentence is outside the Guidelines range, [we] may not apply a presumption of unreasonableness. [We] may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*

The government argues that the plain-error standard of review applies to Rossi's procedural challenges under our decision in *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), because defense counsel failed to make any objections at the close of sentencing after the district court's invitation. The record, however, shows that the district court asked defense counsel, "[counsel], anything further at this point?" R. 19 (Sent. Hr'g Tr. at 46). We have held that similarly phrased questions are insufficient under *Bostic* to merit the plain-error standard. *See United States v. Novales*, 589 F.3d 310, 313 (6th Cir. 2009) ("So is there anything else on these?") (citing *United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007) ("Do you have anything further for the record, [counsel]?"); *United States v. Clark*, 469 F.3d 568, 570–71 (6th Cir. 2006) ("Anything else, [counsel]?"), *cert. denied*, 552 U.S. 965 (2007)). Therefore, we proceed under the abuse-of-discretion standard for Rossi's claims.

## B. Meaningful Opportunity to Address the District Court's Decision to Vary Upward

Rossi first argues that his sentence was procedurally unreasonable because defense counsel was not given a meaningful opportunity to argue against the district court's decision to impose a

sentence significantly higher than the applicable Guidelines range. At oral argument, counsel for

Rossi conceded that the district court's imposition of a non-Guidelines sentence was a variance, not

a departure, from the recommended Guidelines range and that the notice requirement of Rule 32(h)

of the Federal Rules of Criminal Procedure[1] and *Burns v. United States*, 501 U.S. 129, 138–39

(1991), does not apply to variances. *See United States v. Irizarry*, 553 U.S. 708, 715–16 (2008);

*United States v. Blackie*, 548 F.3d 395, 403–04 (6th Cir. 2008). Counsel now argues that Rule 32(i)

requires that the district court give notice, during the sentencing hearing and before announcing its

sentence, of its intent to vary from the applicable Guidelines range to give the defendant a

meaningful opportunity to object.

Rule 32(i), in relevant part, requires the district court to provide defense counsel, government

counsel, and the defendant an opportunity to speak and comment on an appropriate sentence.[2] FED.

---

[1]Rule 32(h) states:
Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

[2]Rule 32(i)(1)(C) requires that "[a]t sentencing, the court[] . . . must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence." Rule 32(i)(4)(A) similarly requires that
[b]efore imposing sentence, the court must:
    (i) provide the defendant's attorney an opportunity to speak on the defendant's behalf;
    (ii) address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence; and
    (iii) provide an attorney for the government an opportunity to speak equivalent to that of the defendant's attorney.

6

R. CRIM. P. 32(i)(1)(C), (4)(A). There is no notice requirement in the plain language of the rule, and Rossi does not dispute that the district court gave him and his counsel an opportunity to address the court before it announced the sentence. Nevertheless he argues that to be a *meaningful* opportunity, the district court must first notify the parties of its intent to vary from the Guidelines. Reading an implicit notice requirement for variances into Rule 32(i), however, would be contrary to the Supreme Court's decision in *Irizarry*.

To understand *Irizarry*, we start with the Supreme Court's decision in *Burns*. Prior to the promulgation of Rule 32(h)'s explicit notice requirement and before *Booker v. United States*, 543 U.S. 220 (2005), rendered the Guidelines advisory, the Supreme Court in *Burns* considered the question of "whether a district court may depart upward from the sentencing range established by the Sentencing Guidelines without first notifying the parties that it intends to depart." 501 U.S. at 131. The Court held that "before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling." *Id.* at 138. Its decision was based on (1) Rule 32's requirement that the parties have the opportunity to comment on matters relating to sentencing,[3] *id.* at 135–37; (2) the overall purpose of Rule 32 to ensure adversarial testing of sentencing issues, *id.* at 137; and (3) due-process concerns, *id.* at 138. Specifically with respect to Rule 32's opportunity-to-comment

---

[3]The opportunity-to-comment requirement now found in subsection (i) of Rule 32 was previously in subsection (a).

requirement, the Court noted that "whether a *sua sponte* departure from the Guidelines would be legally and factually warranted is a 'matte[r] relating to the appropriate sentence.'" *Id.* at 135 (alteration in original) (quoting FED. R. CRIM. P. 32(a)(1) (1990)). Therefore, "it makes no sense to impute to Congress an intent that a defendant have the right *to comment* on the appropriateness of a *sua sponte* departure but not the right *to be notified* that the court is contemplating such a ruling." *Id.* at 135–36. The Court reasoned that "[b]ecause the Guidelines place essentially no limit on the number of potential factors that may warrant a departure, no one is in a position to guess when or on what grounds a district court might depart, much less to 'comment' on such a possibility in a coherent way." *Id.* at 136–37 (citation omitted).

In 2002, an explicit notice requirement was added to Rule 32 in subsection (h) to reflect the Supreme Court's decision in *Burns*. *See* FED. R. CRIM. P. 32, 2002 Advisory Committee Notes. After *Booker*, however, the courts of appeals split on the question of whether Rule 32(h) and the reasoning underlying *Burns* require a district court to notify the parties of its intent to *vary* from the now-advisory Guidelines on the basis of the sentencing factors in 18 U.S.C. § 3553(a). *See Irizarry*, 553 U.S. at 713 n.1 (collecting cases); *id.* at 714–15 (explaining the difference between departures and variances). The Supreme Court granted a petition for writ of certiorari in *Irizarry* to decide the issue, 552 U.S. 1086 (2008), and the government joined the petitioner Irizarry in arguing that notice should be required before a district court can impose a variance. Both the petitioner and the government argued that the three reasons underlying the Court's decision in *Burns* with respect to

8

departures apply with equal force in the context of variances. Brief for Petitioner at 13, *Irizarry*, 553

U.S. 708 (No. 06-7517); Brief for the United States at 12–13, *id.*

The Supreme Court, however, concluded that the notice requirement of Rule 32(h) does not

apply to variances. In its analysis, the Court rejected each of the three reasons underlying *Burns* as

a reason to impose a categorical rule requiring a district court to notify the parties of its intent to vary

from the Guidelines. *Id.* at 713–15. With respect to due process, the Court stated:

> Any expectation subject to due process protection at the time we decided *Burns* that a criminal defendant would receive a sentence within the presumptively applicable guideline range did not survive our decision in *United States v. Booker*, 543 U.S. 220 (2005), which invalidated the mandatory features of the Guidelines. Now faced with advisory Guidelines, neither the Government nor the defendant may place the same degree of reliance on the type of "expectancy" that gave rise to a special need for notice in *Burns*. Indeed, a sentence outside the Guidelines carries no presumption of unreasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007); *see also Rita v. United States*, 551 U.S. 338 (2007).
>
> It is, therefore, no longer the case that "were we to read Rule 32 to dispense with notice [of a contemplated non-Guidelines sentence], we would then have to confront the serious question whether [such] notice in this setting is mandated by the Due Process Clause." *Burns*, 501 U.S., at 138. The due process concerns that motivated the Court to require notice in a world of mandatory Guidelines no longer provide a basis for this Court to extend the rule set forth in *Burns* either through an interpretation of Rule 32(h) itself or through Rule 32(i)(1)(C).

*Id.* at 713–14 (alterations in original). After concluding that lack of notice of the district court's

intent to vary from the Guidelines does not raise due-process concerns, the Court further concluded

that Rule 32(i)'s requirement that parties be given the opportunity to comment on matters relating

to sentencing and Rule 32's overall purpose that sentencing issues be adequately debated both can

be given effect without imposing a categorical notice requirement. *Id.* at 715–16. The Court

expressed its belief that, "in most cases," notice of the district court's intent to vary would not

"change[] the parties' presentations [of argument and evidence] in any material way." *Id.* at 715.

Rather,

> "[i]n the normal case a competent lawyer . . . will anticipate most of what might
> occur at the sentencing hearing—based on the trial, the pre-sentence report, the
> exchanges of the parties concerning the report, and the preparation of mitigation
> evidence. Garden variety considerations of culpability, criminal history, likelihood
> of re-offense, seriousness of the crime, nature of the conduct and so forth should not
> generally come as a surprise to trial lawyers who have prepared for sentencing."

*Id.* at 716 (second alteration in original) (quoting *United States v. Vega-Santiago*, 519 F.3d 1, 5 (1st

Cir.), *cert. denied*, 129 S. Ct. 92 (2008)). The Court "recognize[d] that there will be some cases in

which the factual basis for a particular sentence will come as a surprise to a defendant or the

Government" but concluded that "[t]he more appropriate response to such a problem is not to extend

the reach of Rule 32(h)'s notice requirement categorically, but rather for a district judge to consider

granting a continuance when a party has a legitimate basis for claiming that the surprise was

prejudicial." *Id.* at 715–16. "Now faced with advisory Guidelines, the Court in *Irizarry* chose to

fashion a pragmatic, rather than categorical, solution to the problem of unfair surprise at sentencing."

*United States v. Redmond*, 388 F. App'x 849, 855 (10th Cir. 2010) (unpublished order and judgment)

(internal quotation marks omitted). Therefore, a categorical notice requirement grounded in Rule

32(i) would be contrary to *Irizarry*.

At oral argument, counsel for Rossi attempted to distinguish the notice that he seeks for

variances under Rule 32(i) from the notice that is required for departures under *Burns* and Rule 32(h)

by arguing that the district court's notice that it intends to vary need not be provided in advance of

the sentencing hearing. But *Burns* and Rule 32(h) do not require pre-hearing notice. *See Burns*, 501 U.S. at 139 n.6. "Only 'reasonable notice' is required, and what constitutes reasonable notice will vary depending on the circumstances of the particular case." *United States v. Erpenbeck*, 532 F.3d 423, 443 (6th Cir.), *cert. denied*, 129 S. Ct. 518 (2008); *see also United States v. Springer*, 300 F. App'x 339, 342 (6th Cir. 2008) (unpublished decision) (indicating that neither Rule 32(h) nor our case law requires notice be given prior to the day of sentencing and in writing). Therefore, we do not believe that narrowing the timing to require that the district court notify the parties of its intent to vary only at some point during the sentencing hearing is sufficient to make such a categorical requirement consistent with *Irizarry*.

Nor do the cases that Rossi cites provide support for his argument that Rule 32(i) requires the district court to provide notice of its intent to vary prior to imposing its sentence. In *United States v. Garcia-Robles*, 562 F.3d 763 (6th Cir. 2009), the district court heard argument from the parties before announcing its above-Guidelines sentence. *Id.* at 765. The district court explained why it imposed the significant variance but also told the defendant that it was going to issue a written sentencing opinion and that the defendant could make written objections to his sentence after the opinion issued rather than during the sentencing hearing. *Id.* The district court issued its written sentencing opinion but also entered judgment before the defendant's time to object had elapsed. *Id.* The district court thus had limited ability, under Federal Rule of Criminal Procedure 35(a), to modify its judgment even though the defendant timely had filed objections. *Id.* at 765, 767. Additionally, the defendant filed his notice of appeal—which divested the district court of jurisdiction—before

11

the district court addressed the defendant's objections. *Id.* at 767–68. We concluded that "[a]lthough the Supreme Court has held [in *Irizarry*] that a district court need not provide notice before imposing a variance based on § 3553(a) factors," the defendant "was never afforded an opportunity meaningfully to respond to the district court's decision to impose an upward variance." *Id.* at 768. *Garcia-Robles*, thus, addressed the defendant's ability to respond or object meaningfully *after* the district court announced its sentence. *Cf. United States v. Barahona-Montenegro*, 565 F.3d 980, 985 (6th Cir. 2009) (relying on *Garcia-Robles* and concluding that the defendant did not have the opportunity to respond meaningfully to the district court's sentencing rationale when the district court failed to explain its rationale adequately at the sentencing hearing or in its written statement of reasons issued two months later).

Further, our discussion of *Garcia-Robles* in *United States v. Gunter*, 620 F.3d 642 (6th Cir. 2010), does not expand the impact of *Garcia-Robles* as Rossi suggests. *Gunter* addressed our appellate review with respect to the requirement that a district court must consider all nonfrivolous arguments brought to its attention. *Id.* at 645–46. We therefore observed that "*Garcia-Robles* was about a defendant's inability to argue in the first place, not about the sufficiency of the court's response." *Id.* at 646. Our description of *Garcia-Robles* for purposes of making this distinction, however, did not expand the case to require the district court to notify the parties that it is inclined to vary from the Guidelines before announcing its sentence, as long as the parties have a meaningful opportunity to respond to the district court's sentence.

Rossi also argues that the Seventh Circuit, in *United States v. Luepke*, 495 F.3d 443 (7th Cir. 2007), interprets Rule 32(i) in the way that he asks us to interpret it. In that case, the district court definitively announced a sentence and then for the first time asked the defendant if he wanted to bring anything to the court's attention. *Id.* at 445. The defendant replied, "Nothing. I'm just sorry for everything that's been done and the outcome of this." *Id.* The district court had a brief colloquy with defense counsel and then concluded that it "impose[d] that sentence as previously announced." *Id.* The Seventh Circuit concluded that this "sequence of events at [the defendant's] sentencing hearing denied him the right to allocution" afforded under Federal Rule of Criminal Procedure 32(i)(4)(A)(ii). *Id.* at 446. It explained that "the defendant had little incentive to share his thoughts on the matter of a sentence that he had every reason to believe had already been decided" and that "the district court's later invitation to speak cannot be characterized as an adequate repair of the damage." *Id.* at 450. Thus, *Luepke* instructs that the procedural protections of Rule 32(i) are not given effect if the parties are not given an opportunity to speak until after the district court definitively announces its sentencing decision.

At Rossi's sentencing hearing, however, defense counsel and Rossi were both given an opportunity to address the district court before it orally announced the sentence. Nothing in *Luepke* suggests that Rule 32(i) requires that the district court give notice that it intends to vary from the Guidelines before the parties speak. Indeed, prior to the Supreme Court's decision in *Irizarry*, the Seventh Circuit had concluded that "the concerns that animated the Court's decision in *Burns*," including the parties' ability to comment meaningfully on matters relating to sentencing, "no longer

apply" after *Booker*. *United States v. Walker*, 447 F.3d 999, 1006–07 (7th Cir.), *cert. denied*, 549 U.S. 933 (2006). For all of the above reasons, we reject Rossi's argument that Rule 32(i) categorically requires the district court to provide notice of its intent to vary from the advisory Guidelines before it imposes its sentence. *Cf. United States v. Hall*, 317 F. App'x 203, 206–07 (3d Cir.) (unpublished decision) (rejecting claim that the district court did not provide defense counsel the opportunity to comment on its upward variance, as required by Rule 32(i)(1)(C)), *cert. denied*, 130 S. Ct. 346 (2009).

Nevertheless, the Supreme Court left open the possibility of relief when a party demonstrates that the facts or issues on which the district court relied to impose a variance came as a surprise and that his or her presentation to the court was prejudiced by the surprise. *Irizarry*, 553 U.S. at 715–16; *see also United States v. Orlando*, 553 F.3d 1235, 1238 (9th Cir.) ("*Irizarry* established that a sentencing court abuses its discretion when it imposes an upward variance 1) based on facts that amount to prejudicial surprise; 2) without considering a continuance; 3) where advance notice might have affected the parties' presentations of evidence."), *cert. denied*, 129 S. Ct. 2748 (2009). It is well established that we "requir[e] disclosure of most information relied upon at sentencing." *United States v. Hayes*, 171 F.3d 389, 392 (6th Cir. 1999); *see also United States v. Bey*, 384 F. App'x 486, 491 (6th Cir.) (unpublished decision), *cert. denied*, 131 S. Ct. 586 (2010); *United States v. Christman*, 509 F.3d 299, 304–10 (6th Cir. 2007) (collecting cases). "[W]hen a party has a legitimate basis for claiming that the surprise was prejudicial," the "appropriate response" is "for

14

[the] district judge to consider granting a continuance" so that the parties have "an adequate opportunity to confront and debate the relevant issues." *Irizarry*, 553 U.S. at 715–16.

As stated above in Part II.A, because the district court failed to ask clearly for any objections as required under *Bostic*, we review Rossi's claim for procedural reasonableness and not plain error.[4] On appeal, however, Rossi has failed to identify any information upon which the district court relied to vary from the Guidelines that came as a surprise, either at the hearing or upon receipt of the district court's written sentencing explanation. *See Irizarry*, 553 U.S. at 715. Rossi points to no relevant issues that he did not anticipate or have the opportunity to address at the sentencing hearing. *Id.* at 715–16. Our independent review of the record reveals that defense counsel's arguments and Rossi's allocution at sentencing addressed the victims, the impact on Rossi's family, his 2008 state conviction, and the offense conduct—all factual bases on which the district court relied in its decision to vary upward. Defense counsel also recognized the role of the § 3553(a) factors, specifically emphasizing the argument that Rossi would not commit further crimes in the future. *See* 18 U.S.C. § 3553(a)(2)(C). The only factual bases that may have come as a surprise are (1) the district court's belief that Rossi used money fraudulently obtained from the victims of his scheme

---

[4]We observe that the fact that the district court asked defense counsel if there was anything further—substantially the same question that it asked of the prosecution, R. 19 (Sent. Hr'g Tr. at 47)—refutes Rossi's argument that "[o]nce the district court imposed a sentence double the length of the prosecution's recommendation, the only party afforded the opportunity to respond was the prosecution." Appellant Br. at 11; *accord id.* at 10 (same). Furthermore, the district court did not affirmatively prevent Rossi from objecting at the hearing after the sentence was imposed, *see Garcia-Robles*, 562 F.3d at 767, and, as explained below in Part II.D.2, the district court's written sentencing memorandum, filed fourteen days after the sentencing hearing, adequately set forth in writing the district court's sentencing rationale, *see Barahona-Montenegro*, 565 F.3d at 985.

to repay $113,000 in restitution for his 2008 state-court conviction for passing bad checks,[5] and

(2) the district court's belief that Rossi is hiding or lying about an additional $1,000,000.[6] Rossi

argues only generally that "[n]othing about the sentencing proceedings . . . suggested the need to

marshal arguments against a 144-month sentence," Appellant Br. at 11, but does not indicate what

he would have done differently at the sentencing hearing. *See Irizarry*, 553 U.S. at 715. "Issues

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are

deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal

way, leaving the court to put flesh on its bones." *United States v. Stewart*, 628 F.3d 246, 256 (6th

Cir. 2010) (internal quotation marks and alteration omitted). The district court was not required

categorically to notify the parties of its intent to vary from the Guidelines before it imposed the

sentence, and Rossi has failed to identify any viable arguments of "unfair surprise" and prejudice as

required under the pragmatic solution announced by the *Irizarry* Court. *See United States v. Obi*,

542 F.3d 148, 156 (6th Cir. 2008) (relying on *Irizarry* to reject claim that defendant lacked sufficient

---

[5]In his third assignment of error discussed below, Rossi argues that the district court's belief regarding the repayment of the restitution is an "assumption" or a "hunch" and is "speculative." Appellant Br. at 15. But he raises the argument in the context of arguing that such speculation is not sufficient for departing under U.S.S.G. § 4A1.3, and, as explained above, counsel for Rossi at oral argument conceded that the district court applied a variance, not a departure. Moreover, Rossi provides no information or evidence to rebut the district court's belief regarding the source of the money.

[6]The district court included the "missing" $1,000,000 as a basis for the upward variance in its sentencing memorandum but did not mention it at the sentencing hearing. However, Rossi does not argue that he was denied an opportunity to respond meaningfully to the district court's sentence because the district court included a rationale in the sentencing memorandum that it did not state in open court at the sentencing hearing.

notice of variance); *see also United States v. Mojica*, 357 F. App'x 273, 278 (11th Cir. 2009) (unpublished decision) (rejecting notice argument because the district court was not required to provide notice of its intent to vary and because the defendant did not allege that the factual basis for his sentence was a surprise or "that the district court relied on anything other than [the] garden variety considerations" listed in *Irizarry* (internal quotation marks and alteration omitted)), *cert. denied*, 130 S. Ct. 2394 (2010).

## C. § 3553(a)(6) Sentence Disparity

Rossi next argues that his sentence is substantively unreasonable because it is grossly disproportionate to sentences imposed for similar conduct. He points to cases in this circuit and nationally to argue that his sentence is a "glaring outlier compared to sentences imposed for similar crimes." Appellant Br. at 12–14 (citing *United States v. Meeker*, 411 F.3d 736 (6th Cir. 2005); *United States v. Benskin*, 926 F.2d 562 (6th Cir. 1991); *United States v. Dobish*, 102 F.3d 760 (6th Cir. 1996); *Unites States v. Jarvis*, 258 F.3d 235 (3d Cir. 2001)); *see also* Fed. R. App. P. 28(j) Letter (Jan. 17, 2011) (citing *United States v. Smagola*, 390 F. App'x 438 (6th Cir. 2010); *United States v. Harriett*, No. 10-219 (N.D. Ohio Oct. 22, 2010) (Judgment)). The government notes that many of the cases Rossi cites are pre-*Booker* cases when the Guidelines were mandatory, and the government also cites its own set of cases in which we have upheld upward variances in circumstances similar to this case to argue that the 144-month sentence is reasonable. Appellee Br. at 20–22 (citing *United States v. Smith*, 516 F.3d 473 (6th Cir. 2008); *Erpenbeck*, 532 F.3d 423; *United States v. Tate*, 516 F.3d 459 (6th Cir.), *cert. denied*, 129 S. Ct. 93 (2008)).

Pursuant to 18 U.S.C. § 3553(a)(6), sentencing courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." "[T]his factor concerns *national* disparities between defendants with similar criminal histories convicted of similar criminal conduct." *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir.), *cert. denied*, 129 S. Ct. 450 (2008). It is "permissible for the district court to consider sentencing disparities other than at the national level," but "it was not an abuse of discretion for it not to do so in this case because § 3553(a)(6) does not require it to do so and [Rossi] did not raise any disparity arguments before the district court." *United States v. Tanner*, 382 F. App'x 421, 428–29 (6th Cir. 2010) (unpublished decision) (citing *United States v. Martin*, 371 F. App'x 638, 642 (6th Cir.) (unpublished decision), *cert. denied*, 131 S. Ct. 274 (2010)).

With respect to our review of substantive reasonableness, we have criticized the comparison of the defendant's sentence to those imposed in other singular cases as weak evidence to show a national sentencing disparity. *See United States v. Thomas*, 395 F. App'x 168, 175 (6th Cir. 2010) (unpublished decision) (citing *United States v. Simmons*, 501 F.3d 620, 626 (6th Cir. 2007)); *Tanner*, 382 F. App'x at 428; *see also United States v. Lapsins*, 570 F.3d 758, 774 (6th Cir. 2009) (rejecting singular case comparison). The government's response—providing citations to singular sentences that support *its* position—demonstrates the problem with singular case comparisons: it "'opens the door to endless rummaging by lawyers through sentences in other cases, each side finding random examples to support a higher or lower sentence, as their clients' interests dictate.'" *Thomas*, 395 F. App'x at 175 (quoting *United States v. Saez*, 444 F.3d 15, 19 (1st Cir.), *cert. denied*, 549 U.S. 902

18

(2006)). The fact that the district courts in the other unrelated cases cited by Rossi found those specific defendants deserving of sentences within the Guidelines does not demonstrate that the district court in Rossi's case abused its discretion in imposing a sentence above the Guidelines. *See Tanner*, 382 F. App'x at 428–29; *Lapsins*, 570 F.3d at 774.

"[N]ational uniformity is generally taken into account by the Sentencing Guidelines, which are almost certainly the best indication of ordinary practice since most sentences are within the guidelines." *Simmons*, 501 F.3d at 626 (internal quotation marks omitted). In Rossi's case, his sentence is disproportionate to sentences imposed for similar conduct because the district court decided to apply an upward variance from the advisory Guidelines range. The record shows that the district judge explicitly recognized the need to consider sentence disparities and then noted that Rossi had no co-defendants and "face[d] the same options" as those defendants nationally with similar conduct and background. R. 19 (Sent. Hr'g Tr. at 37–38). The district court then went on to distinguish Rossi's case: "This is a lengthy scheme in terms of time. That sets him apart, multiple levels of deception. It's a second conviction of similar conduct." *Id.* at 38. Thus, a challenge to the substantive reasonableness of his sentence would be more appropriately brought, not as a sentence disparity challenge, but rather as a direct challenge to the reasonableness of the district court's application of the upward variance. *Cf. United States v. Lopez*, 401 F. App'x 49, 52–53 (6th Cir. 2010) (unpublished decision) ("[T]he specific factors considered by the district court justified the upward variance, so any disparity between [the defendant] and other similarly-situated defendants

is not unwarranted."). We reject the singular case comparisons that Rossi offers to support his sentence-disparity argument and now consider Rossi's direct challenges to the upward variance.

## D. Grounds for Above-Guidelines Sentence

In his third assignment of error, Rossi argues that the district court (1) relied on impermissible grounds for imposing an above-Guidelines sentence because the total-loss figure and his criminal history were already adequately considered in the Guidelines range, and (2) failed to provide an adequate explanation of its reasons for the above-Guidelines sentence.

### 1. Total-Loss Figure and Criminal History

Rossi first argues that the district court erred in relying on the loss figure and Rossi's prior criminal history in its consideration of the § 3553(a) factors. He argues that such reliance is "duplicative and excessive" when those are factors already taken into account in the Guidelines range.[7] Appellant Br. at 15. However, we have rejected the argument that a sentence is substantively unreasonable because the § 3553(a) factors on which the district court relied to sentence the defendant outside the advisory Guidelines range were already reflected in the Guidelines calculation. *See Tristan-Madrigal*, 601 F.3d at 636 n.1. The loss amount and Rossi's criminal history are relevant to the § 3553(a) factors. *Id.* at 635. For example, the loss amount informs the district

---

[7]Rossi also argues that the district court failed to make specific findings required to depart upward for the inadequacy of a defendant's criminal history category under U.S.S.G. § 4A1.3(a). As noted above, the district court did not depart under the Guidelines' departure provisions but rather applied a variance based on the § 3553(a) factors. The fact that the district court did not depart under § 4A1.3(a) for an underrepresented criminal history does not preclude the district court from considering Rossi's criminal history in its § 3553(a) analysis. *See United States v. Lanning*, 633 F.3d 469, 474-75 (6th Cir. 2011); *Tristan-Madrigal*, 601 F.3d at 635.

court's analysis of the "nature and circumstances of the offense," § 3553(a)(1), and the "seriousness of the offense," § 3553(a)(2)(A). Rossi's previous criminal conviction is relevant to his "history and characteristics," § 3553(a)(1), and the need to "afford adequate deterrence to criminal conduct," § 3553(a)(2)(B). *See Gunter*, 620 F.3d at 647 (noting that criminal history is relevant to a number of the § 3553(a) factors).

That factors reflected in the Guidelines will also be relevant to the district court's § 3553(a) analysis is inherent in the sentencing scheme set forth by Congress. Congress directed the Sentencing Commission to develop Guidelines that embody the § 3553(a) factors. *Rita v. United States*, 551 U.S. 338, 348–50 (2007). Thus, "both the sentencing judge and the Commission . . . carry[] out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale." *Id.* at 348. The district court "must treat the Guidelines as the starting point and the initial benchmark," and "the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007) (internal quotation marks omitted). But the district court, in its own review of the § 3553(a) factors at the level of the particular defendant, may vary from the advisory Guidelines range. *Id.* at 109. Accordingly, a factor that is already incorporated into the Guidelines is not necessarily an impermissible factor for varying from the advisory Guidelines range. Concluding otherwise "would have the practical effect of making the Guidelines again mandatory." *Tristan-Madrigal*, 601 F.3d at 636 n.1. Rather, we review the reasonableness of the district court's

determination that the Guidelines range fails properly to reflect the § 3553(a) factors. *See United States v. Lanning*, 633 F.3d 469, 477–78 (6th Cir. 2011).

### 2. Failure to Provide an Adequate Explanation

Rossi next argues that "it is unclear what factors the court relied upon to vary upward six levels." Appellant Br. at 16. Rossi provides "five possible factors" that he "gleaned" from the court's discussion at sentencing. *Id.* He argues that he "should not have to speculate as to the reason for the drastic upward variance." *Id.* at 17.

Whether the district court adequately explained its rationale for imposing the particular sentence is a question considered under the procedural prong of the reasonableness inquiry. *Garcia-Robles*, 562 F.3d at 767. The district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 522 U.S. at 50. "[The] district court need not give a mechanical recitation of the § 3553(a) factors, but rather must provide an explanation of why, based on the totality of the circumstances, it chose the sentence that it did." *Stewart*, 628 F.3d at 260–61 (internal quotation marks omitted). Applicable here, Congress also specifically requires a court to state "the specific reason" for imposing a sentence outside the Guidelines range both in open court and in a written statement of reasons. 18 U.S.C. § 3553(c)(2).

Rossi's argument is without merit. At the sentencing hearing, the district court properly calculated and considered the advisory Guidelines range and discussed the § 3553(a) factors. When the district court issued its written judgment, it also issued a three-page sentencing memorandum for

the purpose of "more cogently outlin[ing] the reasons" that it chose to vary upward, "all of which reasons were scattered on the record at Defendant's sentencing on July 13, 2009." R. 20-3 (Sent. Mem.). We conclude that the district court's discussion at sentencing and its written sentencing memorandum constitute a procedurally adequate explanation of its reasoning for imposing a significant upward variance. To the extent that Rossi is arguing that the district court's explanation of the upward variance is substantively unreasonable, we consider that question below.

### 3. Substantive Reasonableness

As we have noted above, the essence of Rossi's second and third assignments of error is a challenge to the substantive reasonableness of the district court's significant upward variance. Rossi argues that "a more compelling justification is required." Appellant Br. at 16–17 (citing *United States v. Davis*, 458 F.3d 491, 496 (6th Cir. 2006), *vacated*, 552 U.S. 1088 (2008)). The Supreme Court has stated that it is "uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50. However, the Court has also rejected a heightened standard of review—e.g., rigid "proportional review" or an "exceptional circumstances requirement"—for sentences outside the Guidelines range.[8] *Id.* at 49. We "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at 51. "[T]he district court is entitled to deference in its sentencing decisions because of its ringside perspective on the

---

[8]*Davis*, 458 F.3d 491, the case on which Rossi relies, was vacated by the Supreme Court in light of *Gall*. 552 U.S. 1088 (2008).

sentencing hearing and its experience over time in sentencing other individuals." *Stewart*, 628 F.3d at 261 (internal quotation marks omitted). For example, in its discussion of the § 3553(a) factors, the district court noted that "in the 13 years that [he has] been a Judge, it's the first time [he has] ever received a letter from a wife saying put [my husband] in jail." R. 19 (Sent. Hr'g Tr. at 39); *accord* R. 20-3 (Sent. Mem. at 1).

Our review of the record reveals that the district court conducted a careful review of the § 3553(a) factors. In concluding that an above-Guidelines sentence was appropriate, the district court relied on the eight-year time period for the scheme; the scheme's multiple levels of deceit and betrayal; Rossi's continued conduct after being caught and after the district court ordered Rossi not to contact victims; the letter from Rossi's wife; the victims' statements; the fact that Rossi took advantage of close personal friendships to carry out his scheme; and the district court's belief that Rossi lacked credibility in saying that he intended to pay back the victims, saying that he paid restitution for his state crime with his own money rather than money from the scheme, and saying that he has been forthcoming with all of his financial transactions. R. 19 (Sent. Hr'g Tr. at 35–43); R. 20-3 (Sent. Mem.). The district court concluded that "[i]f any case warrants an upward variance, . . . it's this one." R. 19 (Sent. Hr'g Tr. at 42). Based on our review of the record and the justifications that the district court provided for the inadequacy of the advisory Guidelines here, we cannot conclude that the district court abused its discretion in deciding to vary upward and to impose a sentence of 144 months of imprisonment.

### III.  CONCLUSION

For the reasons explained above, we conclude that the district court's above-Guidelines sentence of 144 months of imprisonment is not procedurally or substantively unreasonable.  We **AFFIRM** the judgment of the district court.