NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0546n.06

No. 08-2549

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 25, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| DAMARLON CENAKA THOMAS | ) | |
| Defendant-Appellant. | ) | O P I N I O N |
| | ) | |
| | ) | |

BEFORE:   COLE and McKEAGUE, Circuit Judges; MAYS, District Judge.[*]

**McKEAGUE, Circuit Judge.**   Following investigations in 2005 and 2007 of drug

trafficking by the Sunnyside Gang in Saginaw, Michigan, prosecutors obtained guilty pleas from and

convictions against numerous gang members.  Damarlon Thomas, who pled guilty to distribution

of crack cocaine, now appeals, arguing that his 230-month below-the-Sentencing-Guidelines

sentence was substantively unreasonable given his minor role as a street-level dealer.  We find that

the district court did not abuse its discretion in sentencing Thomas, and so affirm the sentence.

**I.**

Over the course of several years the Sunnyside Gang, which included over 100 members, sold

crack cocaine on the South Side (or "Sunnyside" area) of Saginaw, Michigan.  In 2005, the

government arrested, indicted, and convicted several gang members on federal drug charges.  In 2007

the government launched a second investigation targeting gang members.  During the course of this

---

[*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District
of Tennessee, sitting by designation.

investigation, a confidential informant on three occasions purchased crack from Thomas, who was a street-level dealer. In November of 2007, the government indicted Thomas, along with nine other gang members, on various drug charges. Thomas himself was charged with conspiring to distribute crack cocaine and distribution of crack cocaine.

On August 12, 2008, Thomas pled guilty to count 9 of the first superceding indictment: distribution on June 19, 2007, of more than 5 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(B)(iii). At that time, Thomas also admitted that he had in total sold the confidential informant approximately 14.88 grams of crack cocaine in three separate transactions. As part of the plea agreement, Thomas – while conceding that he was subject to a mandatory minimum sentence of ten years and that he qualified as a career offender within the meaning of the Guidelines because he had twice been convicted of felony drug trafficking in Michigan state court – specifically reserved the right to argue that the court should have imposed a below-Guidelines sentence because his criminal history category over-represented the seriousness of his criminal history.

According to the Presentencing Investigation Report (PSR), Thomas was born on August 30, 1985, and was raised in his grandmother's house. He graduated from Saginaw High School in June of 2003 and for a short time attended Minnesota West Community College on a football scholarship. After returning to Saginaw, Thomas began selling drugs for the Sunnyside Gang. In 2005 he was twice arrested for selling crack cocaine; in each case Thomas pled guilty to the felony charges and the state court judges sentenced Thomas to 36 months of probation. Following these guilty pleas, Thomas apparently continued to sell crack cocaine for the Sunnyside Gang until he was arrested in

the summer of 2007. Given his career offender status, and taking into account his acceptance of

responsibility, Thomas was sentenced at Offense Level 34 with a Criminal History Category of VI.

This resulted in a sentencing range under the Sentencing Guidelines of 262-327 months.

At sentencing, the district court explicitly addressed Thomas's argument that his

categorization as a career offender significantly overstated his actual criminal history:

> [T]his gentleman arrives here without ever having been sentenced to a day in jail, and at this point arrives with a career offender designation and a sentence range of a minimum term of 262 months under the guidelines.
>
> I appreciate the point, which is the fact that the gentleman's treatment at sentencing in state court on the prior sentences probably did an inadequate job of informing him of the gravity of the offense if his conduct continued. Notwithstanding that fact, he had any number of circumstances where, with the assistance of an attorney, he had proceeded through drug trafficking offenses and had the assistance of counsel in those instances in order to put into perspective the gravity of continued misbehavior.
>
> I respectfully do not see that we can ascribe a level of fault for leniency in the imposition of this sentence because of the argument that the courts were inordinately lenient in the earlier circumstances in state court.
>
> Second, I have reviewed a number of the sentences that we have imposed with respect to the codefendants largely because of the consideration that counsel has advanced, that imposing a guideline sentence in this instance would be disproportionate given Mr. Thomas' role in the conspiracy or his role in the controlled substance distribution group of folks that were involved here.
>
> Clearly, I think a guideline sentence could be justified in this instance simply if one looks at a comparative prospective with respect to anyone of those other individuals. There are differences in criminal history, there are differences in their level of participation within the conspiracy that I think distinguish these sets of circumstances from those earlier cases. That is to say, I do not find any grounds for either a departure within the guidelines or a variance based on 3553(a) factors with respect to those two arguments.
>
> I do believe there is, however, some justification for a modest variance from the guideline minimum based on legitimate [18 U.S.C. §] 3553(a) factors here. A review

of the transactions at this point largely reflects a street dealer at a retail level. . . . While his behavior has been consistent, repeated violations of the law, nevertheless, his role and involvement in the offense is that of a retail distributor; he is not responsible from the information that the court can see for a greater level of responsibility within the organization.

Also, in looking at 3553(b), the gentleman arrives here without – perhaps by luck but, nevertheless, distinguishing – juvenile record. . . . And, equally important to the court, is the remarks he has made in court. They reflect a distinguishable level of remorse for his circumstance. They also reflect a level of depth that I think is also distinguishable. . . .

That said, the court . . . after having given consideration not only to the guideline factors that we have exhaustively addressed here as well as the 3553(a) factors, commits the defendant to the United States Bureau of prisons for a term of 230 months.

(11/20/08 Sentencing Tr. (R. 220) at 14-18.)

This appeal followed sentencing.

## II.

Thomas argues that the district court's decision to sentence him to 230 months in prison – a sentence which was 32 months below the appropriate Guidelines range – was substantively unreasonable "when his status as a career offender substantially overrepresented the seriousness of [his] criminal history and represented a disparity from sentences imposed upon defendants with similar criminal histories and convicted of similar conduct." (Thomas Br. at 1.) The district court, Thomas argues, erred by incorrectly assessing the 18 U.S.C. § 3553(a) factors, and so the sentence: (1) was greater than necessary, especially given that Thomas had never previously been sentenced to spend time in prison on his prior felony convictions; (2) demonstrated that the district court gave

unreasonable weight to one 3553(a) factor (the suggested Guidelines range); and (3) reflected an

unwarranted sentencing disparity among similarly-situated defendants. We disagree.

Courts of appeals review all sentences "under a deferential abuse-of-discretion standard."

*Gall v. United States*, 552 U.S. 38, 41 (2007). In determining whether a court abused its sentencing

discretion, we look to whether the sentence was both procedurally and substantively reasonable. *See*

*United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). As the Supreme Court explained, we:

> must first ensure that the district court committed no significant procedural error,
> such as failing to calculate (or improperly calculating) the Guidelines range, treating
> the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a
> sentence based on clearly erroneous facts, or failing to adequately explain the chosen
> sentence – including an explanation for any deviation from the Guidelines range.
> Assuming that the district court's sentencing decision is procedurally sound, the
> appellate court should then consider the substantive reasonableness of the sentence
> imposed under an abuse-of-discretion standard. When conducting this review, the
> court will, of course, take into account the totality of the circumstances, including the
> extent of any variance from the Guidelines range.

*Gall*, 552 U.S. at 50-51 (citation omitted). Here, Thomas concedes procedural reasonableness, but

argues that his sentence was substantively unreasonable. "A sentence may be considered

substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence

on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable

amount of weight to any pertinent factor." *United States v. Presley*, 547 F.3d 625, 630-31 (6th Cir.

2008) (quoting *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)).

While Thomas appears to argue that the district court erred both by not departing downward and by not varying downward far enough,[1] in either case, his arguments are ultimately unavailing.

## A. Unreasonableness of Not Departing Downward Under the Guidelines

Although he focuses on the weight accorded the § 3553(a) factors, and so seems to be arguing primarily that the district court should have granted a greater downward variance, Thomas conflates the departure and variance arguments by citing U.S.S.G. § 4A1.3(b)(1), which applies only to departures and which states that "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." While Thomas is correct that § 4A1.3(b)(1) *permits* the district court to depart downward in such circumstances, however, we do "not review a decision not to impose a departure, 'unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure.'" *United States v. Blue,* 557 F.3d 682, 687 (6th Cir. 2009) (quoting *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008)). As the *Santillana* court said, "[w]e do not

---

[1]"'Departure' is a term of art under the Guidelines and is distinct from 'variance.' A Guidelines 'departure' refers to the imposition of a sentence outside the advisory range or an assignment of a criminal history category different than the otherwise applicable category made to effect a sentence outside the range. Importantly, a departure results from the district court's application of a particular Guidelines provision, such as § 4A1.3 or § 5, Part K. A 'variance' refers to the selection of a sentence outside of the advisory Guidelines range based upon the district court's weighing of one or more of the sentencing factors of § 3553(a). While the same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance, the concepts are distinct." *United States v. Grams*, 566 F.3d 683, 686-87 (6th Cir. 2009) (internal citations and quotations omitted) (per curiam).

require that a district court explicitly state that it is aware of its discretion to make such a departure. Rather, we presume that the district court understood its discretion, absent clear evidence to the contrary." *Santillana*, 540 F.3d at 431 (citations omitted). Here, on the contrary, the district court clearly understood that it could depart downward, but it did "not find any grounds for either a departure within the guidelines or a variance based on 3553(a) factors with respect to" the argument that a Guidelines sentence was disproportionate. Accordingly, we do not review the district court's decision not to depart downward under § 4A1.3(b)(1).[2]

## B. Unreasonableness of Not Varying Further Downward From the Guidelines

The heart of Thomas's argument is that the district court erred by not sufficiently varying downward on the basis of the 3553(a) factors after calculating the appropriate Guidelines range. According to 3553(a), a district court "shall impose a sentence sufficient, but not greater than necessary, to comply with" the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from the defendant, and provide the defendant with needed training or treatment in the most effective

---

[2]Even if the district court had chosen to depart under § 4A1.3(b)(1), the authorized Guidelines departure under this section was actually *less* downward than the 32-month variance the district court in fact granted. Given Thomas's career offender categorization, and taking into account Thomas's acceptance of responsibility, Thomas was sentenced at Offense Level 34 with a Criminal History Category of VI. This resulted in a sentencing range of 262-327 months. According to U.S.S.G. § 4A1.3(b)(3)(A) – which explicitly limits any downward departure under § 4A1.3(b)(1) – "The extent of a downward departure under this subsection for a career offender . . . may not exceed one criminal history category." In other words, had the district court relied on § 4A1.3(b)(1) to justify a departure, then the appropriate Guidelines range would have been defined by Offense Level 34 and Criminal History Category V. This would have resulted in a sentencing range of 235-293 months – which, at the low end, is still five months more than the sentence the court imposed.

manner.  *See* 18 U.S.C. § 3553(a)(2).  Among other factors, the sentencing court must also consider: the nature and circumstances of the offense; the history and characteristics of the defendant; the Guidelines range; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(1), (3), (4), & (6).  Thomas argues that the court erred by not varying downward in that the sentence: (1) was greater than necessary; (2)  demonstrated that the court gave unreasonable weight to the Guidelines; and (3) reflected an unwarranted sentencing disparity among similarly-situated defendants.

### i.  Imposing A Sentence Greater Than Necessary

Thomas first argues that the district court imposed a sentence greater than was necessary to meet the purposes of § 3553(a)(2).  In support, he cites various decisions in which courts have considered whether the career offender Guidelines can produce a penalty greater than necessary.  As we stated in 2007, however, "[o]ur review of sentences for reasonableness is not to be confused with the district court's task to impose a sentence that is 'sufficient, but not greater than necessary, to comply with the purposes' of sentencing set forth in 18 U.S.C. § 3553(a)." *Bolds*, 511 F.3d at 578.  Regardless, given Thomas's criminal history, the court did not impose a sentence that was greater than necessary – even given the legitimate § 3553(a) factors.

We addressed a very similar argument in *United States v. Alexander*, 543 F.3d 819, 826 (6th Cir. 2008), in which a low-level drug dealer pled guilty and was sentenced as a career offender to 360 months of imprisonment.  As we concluded in *Alexander* in responding to the argument that the sentence was greater than necessary:

> Alexander argues that his criminal history is of a "petty nature" that justifies a sentence much lower than 360 months of imprisonment, a sentence that would be "sufficient, but not greater than necessary, to comply with the purposes" of sentencing as set forth in 18 U.S.C. § 3553(a)(2). But Alexander is still a career offender – regardless of whether he characterizes his prior felony convictions as "petty." Indeed, despite being a career offender, and despite having already abused the district court's leniency when committing other drug-related offenses while out on bond, Alexander was sentenced at the low end of the recommended Guidelines range. This suggests that the court was mindful of *both* the "nature and circumstances of the offense and the history and characteristics of the defendant."

*Id.* (citations omitted).

Just like the defendant in *Alexander*, Thomas here argues that his criminal history is minor – but also like Alexander, Thomas (as he concedes) was previously convicted of multiple felonies, and has thus appropriately been designated a career offender. Moreover, the sentence of 230 months for Thomas (a 32-month, 12% downward variance), along with the district court's explicit comments, demonstrates that the district court in sentencing was clearly mindful (as required by § 3553(a)(1)) of the nature and circumstances of the offense and the characteristics of the defendant.

### ii. Giving an Unreasonable Amount of Weight to the Guidelines as a Sentencing Factor

Thomas's second argument is that the district court gave too much weight to Thomas's status as a career offender under the Guidelines. While a sentence "may be considered substantively unreasonable when the district court . . . gives an unreasonable amount of weight to any pertinent factor," *Presley*, 547 F.3d at 630-31, the case law offers little guidance as to what an "unreasonable amount of weight" would be. If a district court entirely discounted all but one 3553(a) factor, then that court would presumably be giving an unreasonable amount of weight to that factor. Where, in contrast, a district court explicitly or implicitly considers and weighs all pertinent factors, a

defendant clearly bears a much greater burden in arguing that the court has given an "unreasonable amount of weight" to any particular one. Among the sentencing factors the district court must consider, moreover, the Guidelines hold a special place: as the Supreme Court emphasized in *Gall*, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . . [t]he Guidelines should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49. While sentencing courts must then, with the Guidelines range in mind, consider all other § 3553(a) factors, "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Id.* at 50 n.6.

We have in the past rejected a defendant's argument that the district court failed to accord proper weight to certain sentencing factors where the "arguments and evidence with respect to [the defendant's] plea for a lesser sentence were fully before the district judge, and were expressly noted and considered" before being rejected. *Conatser*, 514 F.3d at 527. Here, similarly, after correctly calculating the appropriate Guidelines range and rejecting either a departure or a variance on the basis of two of Thomas's arguments, the district court concluded that there was "some justification for a modest variance from the guideline minimum based on legitimate 3553(a) factors here," explicitly considered those factors, and then varied downward substantially.

### iii. Imposing a Sentence That Reflects an Unwarranted Sentencing Disparity

Thomas's third argument is that his sentence reflects an unwarranted disparity between similarly-situated defendants. 18 U.S.C. § 3553(a)(6) instructs sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Thomas compares his sentence first to those received by his

co-defendants and defendants in a related case, and then to those received by five defendants sentenced as career offenders elsewhere in the country.

Thomas's comparison of his sentence to those given his co-defendants is both incorrect and unwarranted. While Thomas's sentence of 230 months may exceed the sentences of other Sunnyside Gang members, in fact these other members were not career offenders within the meaning of the Guidelines, and so were not similarly-situated within the meaning of § 3553(a)(6).[3] Regardless, the question under § 3553(a)(6) is not necessarily whether a particular defendant received a sentence that was different from the sentences of his co-defendants. As we have stated repeatedly, "this factor concerns *national* disparities between defendants with similar criminal histories convicted of similar criminal conduct – not disparities between codefendants." *Conatser*, 514 F.3d 508, 521 (6th Cir. 2008) (emphasis in original) (quoting *United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007)). "Because § 3353(a)(6) is not concerned 'with disparities between one individual's sentence and another individual's sentence, despite the fact that the two are co-defendants,' 'the district court is not *required* to consider that type of disparity under § 3553(a)(6).'" *Presley*, 547 F.3d at 631 (emphasis in original) (quoting *Simmons*, 501 F.3d at 623-24).

Thomas's comparison of his sentence to those given five random defendants scattered throughout the United States is only marginally relevant; he cannot demonstrate the existence of a national sentencing disparity for street-level dealers sentenced as career offenders by citing five

---

[3]Notably, Kevin Stephens, whose appeal has been consolidated with Thomas's and who was roughly similarly positioned in the hierarchy of the Sunnyside Gang, *was* sentenced as a career offender and was given a sentence 32 months longer than was Thomas's.

individual district court cases.  In *Simmons*, we approvingly cited a First Circuit case criticizing exactly this sort of argument.  "[A] single example is about the weakest sort of proof of national practice that can be imagined," we observed, warning against a system in which "great weight [is] given to such singular examples."  *Simmons*, 501 F.3d at 626 (quoting *United States v. Saez*, 444 F.3d 15, 18-19 (1st Cir. 2006)).  As the First Circuit had noted, "such a comparison [between different singular sentences given by different judges] opens the door to endless rummaging by lawyers through sentences in other cases, each side finding random examples to support a higher or lower sentence, as their clients' interests dictate."  *Saez*, 444 F.3d at 19.  A more relevant consideration would be whether some significant *percentage* of district courts vary downward significantly (or by more that 32 months or 12% of the Guidelines sentence) where street-level dealers are characterized as career offenders under the Guidelines; Thomas, however, has not provided any evidence to that effect.  That in five cases district courts exercised their discretion to grant downward variances simply cannot prove that the district court in this case imposed a disparate sentence within the meaning of 18 U.S.C. § 3553(a)(6) by *also* varying downward (though perhaps not as much) from the recommended Guidelines range.

**III.**

As the district court imposed a below-the-Guidelines 230-month sentence on Thomas after appropriately calculating the Guidelines range, explicitly considering the pertinent factors, and determining that the § 3553(a) factors justified a 32-month downward variance, we find that the district court did not abuse its discretion in sentencing and so **AFFIRM** the sentence.