NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0221n.06

No. 21-5390

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Jun 03, 2022<br>DEBORAH S. HUNT, Clerk |
| *Plaintiff-Appellee,* | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| FIDEL ANGEL AMAYA BENITEZ, | ) | |
| *Defendant-Appellant.* | ) | |
|  | ) | |

Before: BOGGS, MOORE, and GRIFFIN, Circuit Judges.

BOGGS, Circuit Judge. Fidel Angel Amaya Benitez appeals his sentence and term of supervised release following his felony conviction for illegal reentry. This was the third such violation for Amaya Benitez, who is a citizen of El Salvador. This time, police found large amounts of cash and drugs in his possession. Amaya Benitez pleaded guilty to illegal reentry in exchange for the government's agreeing to dismiss the drug charge, and the district court sentenced him to 68 months of imprisonment—below the range recommended by the Sentencing Guidelines—and 3 years of supervised release. On appeal, Amaya Benitez challenges his sentence as substantively unreasonable and his term of supervised release as procedurally unreasonable. We affirm.

**BACKGROUND**

Fidel Angel Amaya Benitez is a citizen of El Salvador with a long history of unlawful entry into the United States. The instant case is the third occasion on which Amaya Benitez has been discovered residing illegally in the country. He was found to be eligible for deportation in 1989 for committing a crime of moral turpitude, but he was not deported for the first time until 2007 after a conviction for drug possession. Amaya Benitez reentered the country and was convicted of evading arrest and driving under the influence, and he was again deported in 2017 after serving a 40-month sentence for illegal reentry. Amidst these immigration violations, Amaya Benitez racked up a litany of other interactions with law enforcement, including a conviction for unarmed manslaughter (pleaded down from second-degree murder) and an arrest for murder that was no-billed by a grand jury. In 2019, he was pulled over for a traffic stop in Tennessee, again as a result of erratic driving, and officers found $20,000 in cash and a large amount of cocaine in his vehicle, leading to the instant case.

Amaya Benitez agreed to plead guilty to illegal reentry in exchange for the government's dismissing the drug charge pursuant to Federal Rule of Criminal Procedure 11. The parties did not negotiate an appeal waiver. At sentencing, because of Amaya Benitez's repeated unlawful reentries into the country, as well as his lengthy criminal history, the district court noted a recommended range of 100 to 125 months of imprisonment according to the Sentencing Guidelines, based on an offense level of 25 and a criminal history category of V. The fact that Amaya Benitez's prior 40-month sentence for illegal reentry had not deterred him, offset by a criminal-history calculation that may have overstated the severity of Amaya Benitez's past convictions, led the court to grant Amaya Benitez a downward variance and sentence him to 68 months of imprisonment.

With respect to supervised release, the presentence report, the district court, the government, and Amaya Benitez all agreed that the Guidelines recommended one to three years of supervision. They were incorrect: under the Guidelines, a "court ordinarily should not impose a term of supervised release" when "the defendant is a deportable alien who likely will be deported after imprisonment," as Amaya Benitez is. U.S.S.G. § 5D1.1(c). Nevertheless, the court did not mention § 5D1.1(c), and it imposed three years of supervised release—to which neither party objected at sentencing.

On appeal, Amaya Benitez argues that his below-Guidelines sentence was substantively unreasonable. He also claims that the court's imposition of supervised release without discussion of the Guidelines' recommendation against supervision in this case was procedurally unreasonable.

**ANALYSIS**

**A. Length of Sentence**

We review Amaya Benitez's challenge to the length of his sentence—to its substantive reasonableness—for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 56 (2007). "A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Mahbub*, 818 F.3d 213, 232 (6th Cir. 2016) (citation omitted).

Amaya Benitez argues that the district court improperly overweighted the effect of his cocaine conviction—the one that precipitated his original 2007 deportation—by adopting the presentence report's recommended eight-level increase in his offense level because that conviction

was for a two-year felony offense.[1]  In fact, the presentence report had recommended *two* eight-level enhancements: one for the pre-2007 cocaine conviction and another for a two-year felony conviction for evading arrest post-2007 (after he had reentered the country for the first time).  At sentencing, the district court heard objections from Amaya Benitez to each of the eight-level enhancements.  The court was concerned about the evading-arrest enhancement, stating that "if I'm going to pop somebody with an eight-point enhancement, I want to know why, and it's got to be better than the Sentencing Commission told me to, because I don't think the Sentencing Commission expects me to be a robot."  The lack of facts with respect to this particular past offense, as well as the apparent dissonance of receiving a two-year sentence for "a garden-variety evasion offense," in part led the court to agree with Amaya Benitez's argument for a downward variance.

But the court was much less concerned about applying the cocaine-felony enhancement. In the opinion of the court, Amaya Benitez's drug crimes committed subsequent to the cocaine conviction constituted "fairly significant indications that he's [ ] not abiding by the law" and that his repeated reentries into the country represented "a better opportunity to traffic drugs" for him. When comparing the two eight-level enhancements, then, "what is causing the guidelines to be inflated" was "not the eight points for the cocaine charge but the eight points for the evasion."  The eight-level enhancement predicated on Amaya Benitez's initial drug conviction was, the court stated, therefore appropriate.  Ultimately, the court decided to adopt the presentence report's calculation of the Sentencing Guidelines, but, in part due to Amaya Benitez's objections regarding

---

[1] *See* U.S.S.G. § 2L1.2(b)(2)(B):

> If, before the defendant was ordered deported or ordered removed from the United States for the first time, the defendant engaged in criminal conduct that, at any time, resulted in . . . a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was two years or more, increase by 8 levels.

the evading-arrest felony, the court granted him a downward variance: while the government had requested 84 to 105 months, and Amaya Benitez 46 to 57 months, the court sentenced him to 68 months of imprisonment—below the Guidelines range of 100 to 125 months.[2]

Contrary to what Amaya Benitez claims, the fact that the court treated his evading-arrest enhancement one way and his cocaine-felony enhancement another way does not render his sentence substantively unreasonable. Instead, the court understood the differences between the two proposed enhancements, evaluated them in the context of Amaya Benitez's criminal history, and concluded that one was less serious than the other. In ultimately deciding to adopt the Guidelines calculation, the court heeded the Supreme Court's instruction that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6; *see also United States v. Thomas*, 395 F. App'x 168, 173–74 (6th Cir. 2010) (rejecting defendant's argument that the Guidelines overrepresented his criminal

---

[2] The presentence report calculated Amaya Benitez's recommended Guidelines offense level as follows:

| | |
|---|---|
| Base offense level: | 8 |
| Enhancement for repeated felony reentry: | +4 |
| Enhancement for pre-2007 cocaine felony: | +8 |
| Enhancement for evading-arrest felony: | +8 |
| Decrease for acceptance of responsibility: | –3 |
| Total offense level: | 25 |

Combined with a criminal history category of V, this led to a recommended range of 100 to 125 months of imprisonment. At sentencing, the government agreed with Amaya Benitez that his criminal history category should more accurately be IV rather than V. But the parties diverged on how to calculate Amaya Benitez's offense level. The government requested a range of 84 to 105 months of imprisonment, in line with an offense level of 25 (as originally calculated by the presentence report). Amaya Benitez requested that the court reduce each of the 8-level felony enhancements by 3 levels—for a total reduction of 6, and a recalculated offense level of 19—resulting in a range of 46 to 57 months. In the end, the court adopted the presentence report's Guidelines calculations in full, but granted Amaya Benitez a downward variance, and sentenced him to 68 months of imprisonment.

history). We cannot say that, given the court's careful weighing of Amaya Benitez's past actions here and its ultimate granting of a downward variance, it was beyond the pale to follow the clear text of § 2L1.2(b)(2)(B) and apply the cocaine-felony enhancement. There was therefore no abuse of discretion with respect to the sentence imposed, which was not substantively unreasonable.

## B. Term of Supervised Release

As noted above, § 5D1.1(c) of the Sentencing Guidelines counsels against imposing supervised release for a deportable defendant like Amaya Benitez. On appeal, Amaya Benitez claims that the district court imposed a procedurally unreasonable term of supervised release when it disregarded § 5D1.1(c) without explanation. *See United States v. Mack*, 808 F.3d 1074, 1084 (6th Cir. 2015) ("A sentence is procedurally unreasonable if, among other things, the district court . . . fails to adequately explain the chosen sentence." (cleaned up)). Because Amaya Benitez did not object to the imposition of supervised release at sentencing, we review for plain error—error "that affected defendant's substantial rights and [ ] that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010).

This court confronted a similar scenario in *United States v. Solano-Rosales*, 781 F.3d 345 (6th Cir. 2015). Solano-Rosales, too, was to be deported following a criminal sentence, and the court imposed three years of supervised release without objection and without reference to § 5D1.1(c). *Id.* at 350–51. This court affirmed the sentence, in part based on the district court's statements regarding "Defendant's pattern of rapidly returning each time he was removed, . . . the combination of Defendant's immigration record and criminal history, . . . and that the actions of previous judges had not been sufficient to deter him." *Id.* at 354. Those justifications were sufficient to allow an inference that merely mentioning § 5D1.1(c) at sentencing would not have affected the term of supervised release.

Here, as in *Solano-Rosales*, any error did not impact Amaya Benitez's substantial rights because "there is no reason to believe that the district court's failure to expressly discuss § 5D1.1(c) impacted the sentence." 781 F.3d at 354. The relevant application note in the Sentencing Guidelines states that supervised release in the case of a subsequent illegal reentry may be imposed "if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." U.S.S.G. § 5D1.1, cmt. 5. At sentencing, the court explicitly mentioned Amaya Benitez's likelihood of again returning to the country in the future, his extensive criminal history, and the inability of prior (less-lengthy) sentences to deter him—just as the district court in *Solano-Rosales* had. There is therefore no reason to believe that any error in imposing supervised release impacted Amaya Benitez's substantial rights—that it "affected the outcome of the district court proceedings"—so the court did not plainly err in failing to mention § 5D1.1(c). *See United States v. Johnson*, 403 F.3d 813, 815 (6th Cir. 2005).

## CONCLUSION

For the reasons above, the judgment of the district court is **AFFIRMED**.