NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0175n.06

Nos. 22-2155/2161

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 19, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| JEMAR AHTON MASON, | ) ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: COLE, CLAY, and THAPAR, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Jemar Ahton Mason challenges the substantive reasonableness of his 87 month sentence. He pleaded guilty to conspiring to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and conspiring to commit concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (h). Because Mason's sentence was substantively reasonable, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual Background

Around November 2019, law enforcement officers began an investigation into a suspected drug trafficking organization operating in Grand Rapids, Michigan. During this investigation, officers became aware of a scheme perpetrated by Mason and his co-defendants to submit fraudulent loan applications to the federal Paycheck Protection Program ("PPP"). Congress authorized more than $600 billion in funding for PPP loans under the Coronavirus Aid, Relief, and

Economic Security Act and later legislation. Pub. L. No. 116-136, 134 Stat. 281 (2020). These loans were meant to help small businesses pay their employees' salaries and other expenses during the COVID-19 pandemic.

On June 29, 2020, Mason and his co-defendant David Kurbanov applied for a PPP loan for In A Minute Entertaining, LLC. This LLC was nonfunctional and had no employees or open bank accounts. In the application, Mason falsified the average monthly payroll and number of employees of the LLC, and falsely stated that he had not been convicted of a felony in the preceding five years. Mason intended to invest much of the money garnered from the PPP loan for personal gain; however, on the form, Mason certified that he intended to use the loan to maintain the LLC's payroll and business expenses. Mason and Kurbanov received a PPP loan of $794,692 based on this application.

Mason and Kurbanov submitted a second fraudulent PPP loan application on June 30, 2020 for Kurbanov Communications, LLC, also a nonfunctioning company. Kurbanov filled out this form and similarly misrepresented the average monthly payroll and employees of the LLC, and misrepresented how the funds would be used. Kurbanov received a PPP loan of $700,375 based on this application.

After receiving their PPP loans, Mason and Kurbanov attempted to conceal their misuse of the funds by distributing some of the money to family and friends and listing these transactions as payroll expenses. The men spent about $349,000 of the PPP loans on personal expenses, such as jewelry and travel. Eventually, Mason and Kurbanov attempted to wire $500,000 to a bank account overseas so that a different co-defendant could invest this money and they could receive the profits. The wire was unsuccessful.

Also in 2020, Drug Enforcement Administration ("DEA") investigators began investigating Mason for drug trafficking activities in the Grand Rapids area. On August 6, 2020, Mason purchased two ounces of cocaine from his co-defendant Brian Mosby. Mason then sold the cocaine to a DEA informant for $4,000. Between August 2020 and September 2020, case agents intercepted numerous calls and text messages between Mason, Mosby, and Sehann Mason ("Sehann") in which the three organized multiple transactions to deliver controlled substances. This included one instance where Mason directed Sehann to deliver 3 grams of cocaine to a customer.

**B. Procedural History**

Mason was indicted on charges relating to the above facts in two separate criminal cases. First, a grand jury charged him on December 16, 2020 with one count of conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1). A second superseding indictment, filed on September 22, 2021, charged Mason with the same offense. Mason pleaded guilty to this charge. In a separate criminal case initiated while Mason's drug case remained pending, a grand jury charged Mason on August 4, 2021 with multiple counts related to his fraudulent PPP loan applications, subsequent misuse of the funds received from these applications, and attempted concealment of this misuse of funds. Mason pleaded guilty to one count of conspiracy to commit concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (h).

Mason failed to fully comply with his bond conditions in both cases, which included refraining from the use of drugs and submitting to drug testing as directed by the pretrial services office. He failed to report for drug testing multiple times, and admitted to pretrial services that he had used cocaine on one occasion. Consequently, the magistrate judge assigned to his cases

revoked his bond for a little under a month. After being released on bond again, Mason had no other drug-related incidents and continued working at the job he had obtained while initially out on bond.

The district court sentenced him to both charges at the same time. It calculated Mason's offense level under the Sentencing Guidelines as 21. Because the drug charge was not closely related to and had an offense level ten points below the fraud charge, Mason's offense level only reflected the fraud charge. *See* U.S.S.G. §§ 3D1.2, 3D1.4(c). The district court determined that Mason had a criminal history category of V based on a criminal history score of eleven. This produced a Guidelines range of 70 to 87 months' imprisonment.

Before sentencing, Mason requested a downward variance partly due to his personal background. He noted that he has several young children, the youngest of whom was born just before his sentencing hearing, and that his fiancée provided him with strong support at home. He also argued that his crimes arose out of financial hardship and his own issues with addiction, and he noted his serious heart and blood pressure issues. He further requested a downward variance to account for what he argued were the overly punitive Guidelines applicable to fraud convictions, as well as the relatively lower sentences of his co-defendants in both cases.

The district court denied his motion for a downward variance and sentenced him to 87 months' imprisonment, the top of Mason's Guidelines range. At sentencing, the district court found that Mason's employment while on bond was "fantastic," but that his background indicated that this looked like the first "legitimate work for which taxes can be paid" that Mason had pursued. Sent. H'rg Trans., R. 304, Page ID #1647–48.[1] The court also noted that he had seven children,

---

[1] Citations are to the record in *United States v. Mason*, No. 1-21-cr-69-JMB (W.D. Mich. Dec. 20, 2022).

including multiple young children. The district court also considered Mason's drug-related bond violations as both aggravating and mitigating, considering that they arose out of Mason's struggles with addiction.

Considering the rest of the factors outlined in 18 U.S.C. § 3553(a), the district court found that Mason's crimes were serious. It discounted Mason's arguments that he committed these crimes because of financial necessity or addiction. It found his prior history of addiction to be mitigating, but found that his engagement in drug distribution went "far beyond feeding one's addiction." *Id.* at Page ID #1646. It also found that the scope of his fraud and his choice to target a COVID-19 pandemic relief program meant that the crime did not arise purely out of his financial needs, but instead was a "take from the grab bag" used to support the country during the pandemic. *Id.* Acknowledging Mason's extensive criminal history, the district court found that a sentence of 87 months would adequately deter future criminal conduct and protect the public from future crimes. Finally, it recommended that Mason participate in a substance abuse program while in custody, and recommended that the Bureau of Prisons assign him to a facility that could address his medical needs. Mason timely appealed his sentence.

## II. DISCUSSION

### A. Standard of Review

We review the substantive reasonableness of a sentence "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). We consider the length of the sentence and, specifically, whether the district court abused its "discretion in determining that the" factors set out in 18 U.S.C. § 3553(a) "supported the sentence imposed." *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020) (cleaned up). These factors include the "need for the sentence imposed":

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2). "A sentence is substantively unreasonable if the sentencing court arbitrarily selected the sentence, based the sentence on impermissible factors, failed to consider pertinent § 3553(a) factors, or gave an unreasonable amount of weight to any pertinent factor." *United States v. Cunningham*, 669 F.3d 723, 733 (6th Cir. 2012). When, as in this case, a district court sentences a defendant within the Guidelines, we apply a rebuttable presumption of reasonableness. *United States v. Wandahsega*, 924 F.3d 868, 890 (6th Cir. 2019).

**B. Analysis**

On appeal, Mason contends that the district court failed to attribute appropriate weight to certain mitigating factors and gave unreasonable weight to certain aggravating factors when it denied his request for a downward variance and sentenced him to the highest end of his Guidelines range. Specifically, he argues that the district court failed to adequately consider the positive changes in his life and his family situation, the purported flaws in the Sentencing Guidelines relating to fraud convictions, and the lower sentences given to most of his co-defendants. Mason argues that, by contrast, the district court unreasonably weighed the Guidelines calculations, his criminal history and bond violations, and the fact that he defrauded a COVID-19 relief program.

**1. Failure to Adequately Consider Mitigating Factors**

Mason argues that the district court did not adequately consider Mason's success while on bond in obtaining a new job and providing for his family, including his young children, all while

struggling with addiction and his serious heart problems. Mason does not—and cannot—argue that the district court failed to consider whether his recent life changes showed his commitment to rehabilitation. Instead, the district court acknowledged Mason's new job and the birth of his child, and expressly acknowledged that it viewed Mason's struggles with addiction as a mitigating factor in support of a lower sentence. Nevertheless, the court found that Mason's recent successes and past struggles with addiction did not outweigh his criminal history or the seriousness of the two offenses at issue. By challenging the district court's reasoning, Mason effectively asks us to rebalance the district court's assessment of the § 3553(a) factors because the court did not find his personal history sufficiently mitigating; however, we may not "reverse a sentence simply because we determine that a different sentence would be appropriate." *United States v. Higgins*, 557 F.3d 381, 398 (6th Cir. 2009), *abrogated on other grounds by DePierre v. United States*, 564 U.S. 70, 79 (2011). When, as in this case, the record reflects that the district court carefully considered potentially mitigating information about a defendant's personal background and decided that other factors warranted a within-Guidelines sentence, a defendant has not rebutted the presumption that his sentence is reasonable. *See United States v. Haj-Hamed*, 549 F.3d 1020, 1028 (6th Cir. 2008) ("[A]n appellate court should generally defer to the 'special competence' of the district court in determining whether family circumstances are so extraordinary as to justify a departure or a variance from a Guidelines sentence."); *see also United States v. Green*, 458 F. App'x 523, 527 (6th Cir. 2012).

Mason also contends that the district court erred in failing to adequately consider his arguments that the Guidelines ascribe overly long sentences for drug and fraud cases. In effect, he argues that the district court should have given more weight to "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar

conduct." 18 U.S.C. § 3553(a)(6). Because the Guidelines themselves are meant to create uniformity in sentencing among similarly situated defendants, we have acknowledged that challenging a within-Guidelines sentence as creating an unwarranted disparity is "unconventional." *United States v. Swafford*, 639 F.3d 265, 270 (6th Cir. 2011).

Mason first points to national sentencing trends describing how many defendants convicted of crimes similar to his received downward variances. Mason is correct that sentencing data from the 2021 fiscal year indicates that approximately one-third of defendants sentenced for powder cocaine trafficking or fraud-related offenses received a downward variance, with slightly more fraud offenders receiving variances.[2] Mason's proffered statistics, however, are blanket summaries of defendants who have committed similar crimes across the country. They do not specify the relative criminal history or the nature of the offenses committed by the defendants who received these downward variances. Thus, they do not shed much light on whether the district court's sentence in this case created an unwarranted disparity. Considering similarly broad statistics, we have acknowledged that, "because the point of the guidelines is to reduce disparities, general statistics that cover a multitude of other crimes committed in a multitude of other ways do not create an 'unwarranted' disparity." *United States v. Mullet*, 822 F.3d 842, 854 (6th Cir. 2016). Even if the statistics were more specific, Mason never presented them to the district court, and the district court did not abuse its discretion in failing to consider them *sua sponte*. *See United States v. Hymes*, 19 F.4th 928, 935–36 (6th Cir. 2021) (rejecting a requirement that district courts consider national sentencing statistics before sentencing); *see also United States v. Mejia-Almazan*, No. 23-

---

[2]*See* United States Sentencing Commission, *Quick Facts: Powder Cocaine Offenses* (2021),https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Powder_Cocaine_FY21.pdf; United States Sentencing Commission, *Quick Facts: Theft, Property Destruction, and Fraud Offenses* (2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Theft_Property_Destruction_Fraud_FY21.pdf.

5321, 2024 WL 776430, at *3 (6th Cir. Feb. 26, 2024). Further, it is not clear that these statistics are in fact helpful to Mason's position, as they indicate that the majority of defendants sentenced for these crimes received a within-Guidelines sentence.

Mason also points to an out-of-circuit district court case which, he claims, highlights that the Guidelines create disproportionately high sentencing ranges for fraud cases. The district court did not err by sentencing Mason to a within-Guidelines sentence despite another district court's policy disagreement with the Guidelines. Initially, the case Mason cites in support concerned securities fraud, and almost all of the Guidelines provisions that increased those defendants' sentencing ranges so dramatically did not apply to Mason. *See United States v. Parris*, 573 F. Supp. 2d 744, 747–48 (E.D.N.Y. 2008). More importantly, we have repeatedly reiterated that "the fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees." *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011) (emphasis in original); *see also United States v. Allen*, 93 F.4th 350, 359–60 (6th Cir. 2024); *United States v. Kamper*, 748 F.3d 728, 742 (6th Cir. 2014). Thus, the district court did not abuse its discretion in rejecting Mason's policy dispute with the Guidelines.

Finally, Mason contends that the district court failed to adequately consider that his co-defendants in both the fraud and drug cases received sentences lower than 87 months. But as we have acknowledged, "[d]isparities between the sentences of coconspirators can exist for valid reasons, such as differences in criminal histories, the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government." *United States v. Conatser*, 514 F.3d 508, 522 (6th Cir. 2008). These differences among defendants are present in this case. All of

Mason's co-defendants had lower criminal history scores. More importantly, only one other defendant was sentenced for both drug and fraud offenses. And that defendant received a 97 month sentence, 10 months higher than Mason's sentence. Although Mason certainly received a longer sentence than most of his co-defendants in both cases, this sentence was not an unwarranted disparity because his co-defendants did not have "similar records" and had not "been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). That Mason's sentence was longer than his co-defendants does not make his sentence unreasonable; rather, it represents that the district court carefully considered Mason's individualized circumstances as the Guidelines and the § 3553(a) factors direct.

### 2. Unreasonable Weighing of Aggravating Factors

Contrary to Mason's arguments, the district court did not unreasonably weigh the Guidelines, Mason's criminal history and bond violations, and the fact that his fraud occurred during the COVID-19 pandemic when calculating his sentence. Mason first argues that the district court gave too much credence to his Guidelines range by sentencing him to 87 months' imprisonment. The district court, however, was obligated to consider Mason's Guidelines range. Moreover, because they serve as the "starting point and the initial benchmark," *Gall*, 552 U.S. at 49, for sentencing decisions, the Guidelines hold a "special place" in a district court's sentencing determination. *United States v. Thomas*, 395 F. App'x 168, 174 (6th Cir. 2010). Mason does not argue, and the record does not reflect, that the district court treated the Guidelines as mandatory, which would have constituted procedural error. *Gall*, 552 U.S. at 51. To the contrary, based on the seriousness of the offenses, the district court indicated that it would be willing to sentence Mason above his Guidelines range. Instead, Mason only argues that the district court afforded the Guidelines unreasonable weight. But when a district court properly considers the Guidelines range

in addition to the other § 3353(a) factors, it does not unreasonably weigh the Guidelines merely by imposing a within-Guidelines sentence. *See Conatser*, 514 F.3d at 526–27; *Thomas*, 395 F. App'x 174.

Moreover, it bears repeating that Mason was sentenced for two crimes, but his Guidelines range only represented the fraud offense. He correctly notes that the Sentencing Guidelines did not permit the district court to increase his offense level based on the drug offense because the drug offense was not closely related to and corresponded to an offense level more than nine points lower than his fraud offense. *See* U.S.S.G. §§ 3D1.2; 3D1.4(c). The Guidelines, however, explicitly acknowledge that when another offense of conviction does not increase the Guidelines range, this "may provide a reason for sentencing at the higher end of the sentencing range for the applicable offense level." U.S.S.G. § 3D1.4(c). By sentencing him to the highest end of the Guidelines range, the district court gave effect to this provision.

The district court similarly did not unreasonably weigh Mason's bond violations and criminal history, or the fact that he defrauded a COVID-19 pandemic relief program. Initially, the district court explicitly considered Mason's bond violations to be both aggravating *and* mitigating, given that his use of drugs while on bond was a result of his addiction. Thus, even though the district court emphasized his bond violations at sentencing, it appears to have viewed them as, at most, only mildly aggravating when calculating Mason's sentence. Moreover, the district court reasonably considered that Mason's extensive criminal history merited a sentence that would deter him from committing future crimes as he had not been "deterred so far." Sent. H'rg Trans., R. 304, Page ID #1649. The district court also did not abuse its discretion in finding that Mason's fraud perpetrated on a government program meant to provide aid during the middle of the COVID-19 pandemic enhanced the seriousness of his crime. Merely attaching "great weight" to these valid

considerations does not make Mason's sentence unreasonable. *Gall*, 552 U.S. at 57. Viewing the totality of the record before us, the district court did not abuse its discretion in weighing any of the § 3553(a) factors. Mason has, accordingly, failed to rebut the presumption that his within-Guidelines sentence was reasonable.

### III. CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** the judgment of the district court.